DIAZ, Circuit Judge,
dissenting:
In concluding that Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), invalidated sodomy laws only as applied to private consenting adults, the Virginia Court of Appeals did not reach a decision that “was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.” Harrington v. Richter, — U.S. -, 131 S.Ct. 770, 786-87, 178 L.Ed.2d 624 (2011). The majority ultimately may be proven right that the Virginia “anti-sodomy provision facially violates the Due Process Clause of the Fourteenth Amendment.” Maj. Op. at 156. But because the matter is not beyond doubt after Lawrence, and because the district court was bound to give Virginia courts the benefit of that doubt on federal collateral review, I respectfully dissent.[1]
I.
While we review a district court’s denial of habeas relief de novo, Wolfe v. Johnson, 565 F.3d 140, 160 (4th Cir.2009), in adjudicating a federal petition for habeas relief from a state court conviction, the Antiter-rorism and Effective Death Penalty Act of 1996 (“AEDPA”) “limit[s] the federal courts’ power to issue a writ to exceptional circumstances” where the state court decision on the merits “ ‘resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.’ ” Richardson v. Branker, 668 F.3d 128, 138 (4th Cir.2012) (quoting 28 U.S.C. § 2254(d)). “If this standard is difficult to meet, that is because it was meant to be.” Harrington, 131 S.Ct. at 786.
The majority elides this burden altogether, passing upon the constitutionality of the Virginia anti-sodomy provision as if it were presented in the first instance. In doing so, my colleagues fail to account for the rigor of federal habeas review, which is not intended to be “a substitute for ordinary error correction through appeal.” Id. Because MacDonald’s conviction does not rise to the level of an “extreme malfunction[] in the state criminal justice system[],” id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring)), I would affirm the district court’s judgment.
*168 II.
A.
The majority grants MacDonald federal habeas relief on the basis that the Virginia anti-sodomy provision[2] facially violates the Due Process Clause. The Virginia Court of Appeals, citing its own precedent, concluded that Lawrence did not facially invalidate all sodomy statutes,[3] but rather only the application of such statutes to private, consensual sexual activity among adults. See MacDonald v. Commonwealth, No. 1939-05-2, 2007 WL 43635, at *1 (Va.Ct. App. Jan. 9, 2007) (citing McDonald v. Commonwealth, 48 Va.App. 325, 630 S.E.2d 754, 756-57 (2006)). Accordingly, the Virginia Court of Appeals concluded that the Virginia anti-sodomy provision was constitutional as applied to MacDonald because his sexual conduct involved a minor. Id.
The majority appears to disagree with this “as-applied” interpretation of Lawrence on two unrelated grounds. First, Lawrence overruled Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), which dismissed a facial challenge to the constitutionality of a sodomy law. Because the Virginia anti-sodomy provision is indistinguishable from the statute in question in Bowers, the majority reasons that MacDonald’s facial challenge must succeed just as — according to Lawrence — the facial challenge in Bowers should have. Second, the majority contends that allowing the Virginia anti-sodomy provision to apply to minors would entail rewriting the statute in a manner forbidden by Ayotte v. Planned Parenthood of N. New Eng., 546 U.S. 320, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006). I address each ground in turn.
B.
In Lawrence, Texas police officers responding to an alleged weapons disturbance entered a private residence where two men were engaged in a sexual act. Lawrence, 539 U.S. at 562-63, 123 S.Ct. 2472. The state charged the men with violating a Texas sodomy statute criminalizing “any contact between any part of the genitals of one person and the mouth or anus of another person.” Id. at 563, 123 S.Ct. 2472 (citing Tex. Penal Code Ann. § 21.01).
Overruling Bowers, Lawrence explained that decisions made in private by consenting adults “concerning the intimacies of their physical relationship, even when not intended to produce offspring, are a form of ‘liberty’ protected by the Due Process Clause of the Fourteenth Amendment.” Id. at 578, 123 S.Ct. 2472 (quoting Bowers, 478 U.S. at 216, 106 S.Ct. 2841 (Stevens, *169 J., dissenting)). In the penultimate paragraph of the opinion, however, Lawrence prefaced its holding with the following qualification:
The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter. The case does involve two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle.

Id.

The majority characterizes this segment of the opinion as “ruminations concerning the circumstances under which a state might permissibly outlaw sodomy” that “no doubt contemplated deliberate action by the people’s representatives, rather than by the judiciary.” Maj. Op. at 165. I do not see how the majority can be so certain. If anything, the commentary on what “the present case does not involve” is characteristic of an as-applied ruling, particularly because the Court used the words “this case,” not “this statute,” to limit its holding. See Lawrence, 539 U.S. at 578, 123 S.Ct. 2472.
This language arguably confines the scope of constitutional protection to private sexual intimacy between consenting adults. In fact, the Court repeatedly emphasized these distinctions throughout its historical and legal analysis of sodomy laws. See id. at 567-69, 571-73, 123 S.Ct. 2472. In defending its view that sodomy laws were never applied to private sexual conduct among consenting adults, Lawrence recounted the historical enforcement of sodomy statutes:
Laws prohibiting sodomy do not seem to have been enforced against consenting adults acting in private. A substantial number of sodomy prosecutions ... were for predatory acts against those who could not or did not consent, as in the case of a minor or the victim of an assault. As to these, one purpose for the prohibitions was to ensure there would be no lack of coverage if a predator committed a sexual assault that did not constitute rape as defined by the criminal law.... Instead of targeting relations between consenting adults in private, 19th-century sodomy prosecutions typically involved relations between men and minor girls or minor boys, relations between adults involving force, relations between adults implicating disparity in status, or relations between men and animals.
Id. at 569, 123 S.Ct. 2472 (emphasis added). This historical discussion also evinces an as-applied ruling to private consenting adults, for it is only relevant inasmuch as it identifies the valid applications of sodomy laws outside this zone of constitutionally protected liberty.
In any event, in order for MacDonald to prevail on his federal habeas petition, it must be clear that Lawrence facially invalidated all sodomy statutes. See Harrington, 131 S.Ct. at 786-87. Nowhere in the opinion does the Court do that. The majority nevertheless infers the unconstitutionality of Virginia’s anti-sodomy provision from the fact that Lawrence expressly overruled Bowers. Again, this is a bridge too far. If it is difficult to discern from the Lawrence opinion whether it invalidated all sodomy statutes, it is even more of a stretch to do so by negative inference from the case it overturned.
The majority also relies on Martin v. Ziherl, 269 Va. 35, 607 S.E.2d 367 (2005), which invalidated the Virginia fornication *170 statute as contrary to Lawrence. Despite the fact that Ziherl involved the private sexual conduct of adults, the majority sees “no valid reason why the logic of that ruling should not have applied with equal force to the ruling of the Court of Appeals of Virginia in MacDonald’s case.” Maj. Op. at 164. However, Ziherl undercuts the majority’s conclusion entirely, because in that case the Supreme Court of Virginia reached the same “as-applied” interpretation of Lawrence as the Virginia Court of Appeals did in this case, and invalidated the Virginia fornication statute only as applied to the conduct protected by Lawrence:
It is important to note that this case does not involve minors, non-consensual activity, prostitution, or public activity. The Laurrence court indicated that state regulation of that type of activity might support a different result. Our holding, like that of the Supreme Court in Lawrence, addresses only private, consensual conduct between adults and the respective statutes’ impact on such conduct.
Ziherl, 607 S.E.2d at 371. Furthermore, Ziherl was a Virginia civil case on direct appeal — a far cry from federal collateral review of a state court conviction — and is not “clearly established” federal law. It has no place in the analysis, and to the extent it does, it undermines the majority’s reasoning.
Given the opaque language of Lawrence, I do not share the majority’s conviction concerning the facial unconstitutionality of Virginia’s anti-sodomy provision. Reasonable jurists could disagree on whether Lawrence represented a facial or an as-applied invalidation of the Texas sodomy statute. In fact, they already have. Compare Massachusetts v. U.S. Dep’t of Health & Human Servs., 682 F.3d 1, 8 n. 4 (1st Cir.2012) (characterizing Lawrence decision as facial invalidation of statute), and Sylvester v. Fogley, 465 F.3d 851, 857 (8th Cir.2006) (same), with D.L.S. v. Utah, 374 F.3d 971, 975 (10th Cir.2004) (explaining that Lawrence “invalidat[ed] Texas’ sodomy statute as applied to consensual, private sex between adults”), and Muth v. Frank, 412 F.3d 808, 812 (7th Cir.2005) (characterizing Laurrence as holding that Texas sodomy statute “was unconstitutional insofar as it applied to the private conduct of two consenting adults”).
C.
The majority also misreads Ayotte, effectively turning the “normal rule” of “partial, rather than facial, invalidation” on its head. Ayotte, 546 U.S. at 329, 126 S.Ct. 961 (quoting Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 504, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985)). The exception to an as-applied invalidation is just that — -an exception to that “normal rule” which, as evidenced by the cases cited by the majority, applies almost exclusively to challenges to overbroad statutes on First Amendment free-speech grounds.
Furthermore, the majority overlooks that Ayotte actually declined to facially invalidate the New Hampshire statute at issue in that case because there was “some dispute as to whether New Hampshire’s legislature intended the statute to be susceptible to such [an as-applied] remedy.” Ayotte, 546 U.S. at 331, 126 S.Ct. 961. Concluding “that the lower courts need not have invalidated the law wholesale,” the Court “recognize[d] the possibility of a modest remedy: .... an injunction prohibiting unconstitutional applications.” Id. at 331-32, 126 S.Ct. 961.
Even if Ayotte were instructive, therefore, it simply invites the next question: “Would the [Virginia] legislature have preferred what is left of its statute to no statute at all?” Id. at 330, 126 S.Ct. 961. *171 The majority wrongly assumes, without the proof required by Ayotte, that the Virginia General Assembly did not intend for its anti-sodomy provision to apply to the conduct that Laurrence arguably exempted from constitutional protection, despite the fact that Lawrence itself acknowledged that “one purpose for the [sodomy laws]” could be to cover “predatory acts against those who could not or did not consent, as in the case of a minor or the victim of an assault.” Lawrence, 539 U.S. at 569, 123 S.Ct. 2472.[4]
In order for the Virginia anti-sodomy provision to escape facial invalidity, it need not criminalize only conduct that falls outside constitutional protection. See United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (“The fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an ‘overbreadth’ doctrine outside the limited context of the First Amendment.”). Indeed, to suggest that a state must excise the constitutional defects of a statute by legislative revision before enforcing those portions that pass constitutional muster would turn every as-applied ruling into a facial invalidation.
III.
If a federal court is to grant a writ of habeas corpus to a state prisoner incarcerated under Virginia law, it needs to be more than “confident” that the underlying criminal conviction violates the Constitution. The foundation for the issuance of the writ requires a certainty, not just a likelihood, that a state court ruling “reached a decision contrary to clearly established federal law.” See Harrington, 131 S.Ct. at 786-87. Unlike the majority, the district court here remained faithful to that distinction in declining to issue the writ.
I respectfully dissent.

. For the reasons stated by the district court, I would also affirm the denial of habeas relief on the additional constitutional claims asserted by MacDonald.

. I refer to the statute in question, Va.Code § 18.2-361(A), as the Virginia anti-sodomy provision. Section 18.2-361(A) provides: "If any person carnally knows in any manner any brute animal, or carnally knows any male or female person by the anus or by or with the mouth, or voluntarily submits to such carnal knowledge, he or she shall be guilty of a Class 6 felony.”

. The Virginia Court of Appeals also ruled that MacDonald lacked standing to advance such a facial challenge under Ulster County, which held that a litigant can not raise a facial attack to a statute that is constitutional as applied to him. Ulster County Court v. Allen, 442 U.S. 140, 155, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). The majority dismisses this principle, reasoning that because the Virginia anti-sodomy provision is facially unconstitutional, the law cannot be constitutional as applied to MacDonald.
While this analysis is circular, I do not believe the standing principle set forth by Ulster County matters here. The as-applied and facial challenges brought by MacDonald entail the same inquiry — whether Lawrence invalidated sodomy statutes on an as-applied or facial basis.

. Virginia’s anti-sodomy provision was in place (in one form or another) long before Lawrence was decided. See Doe v. Commonwealth’s Attorney, 403 F.Supp. 1199, 1202-03 (E.D.Va.1975). Accordingly, there is no support for the majority's suggestion that the Virginia General Assembly enacted an imper-missibly broad statute with the specific intent that the judiciary would subsequently sort out the proper constitutional limitations of enforcement, for none then existed.